**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LESTER RICHARD, ) | |
| ) | CASE NO.    5:10-CV-02190 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
|    Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Lester Richard ("Richard") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Richard's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is AFFIRMED.

**I.  Procedural History**

On November 16, 2006, Richard filed an application for POD and DIB alleging a disability onset date of March 3, 2003.  His application was denied both initially and upon

reconsideration. Richard timely requested an administrative hearing.

On July 8, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Richard, represented by counsel, testified. Thomas F. Nimberger testified as an impartial vocational expert ("VE"). On September 21, 2009, the ALJ found Richard was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Richard claims the ALJ erred by: (1) failing to find that his depression and anxiety constituted a severe impairment; (2) improperly evaluating his credibility; and, (3) failing to apply medical-vocational Rule 201.04. (ECF No. 16.)

## II. Evidence

### *Personal and Vocational Evidence*

Age fifty-four (54) at the time of his administrative hearing, Richard is a "person closely approaching advanced age" under social security regulations. *See* 20 C.F.R. § 404.1563(d). Richard has a high school education and past relevant work as a crane operator.

### *Hearing Testimony*

At the hearing, Richard testified to the following:

- He retired in March of 2003 from the Timken company after thirty years. At the time, he was a ladle crane operator handling hot steel. (Tr. 24-26.)

- An explosion at work in 1997 or 1999 affected his lungs, causing him to be unable to work over time. He also worked around asbestos when he was first hired. (Tr. 25-28.) He felt like he could probably have kept working at the time he retired, but thought it was bad for his health. (Tr. 26.) He had high blood pressure and missed two days each month due to colds and sinus issues. *Id*. He also thinks he may have already had carpal tunnel syndrome at that time. (Tr. 26-27.)

- He receives a gross monthly pension of $2,087.00.  (Tr. 25.)

- After retirement, he attempted to work for a cleaning company, but was unable to tolerate the fumes from the cleaning chemicals.  (Tr. 27.)

- He has a nervous condition resulting in high anxiety.  (Tr. 27.)  He had been seeing a doctor for the previous two years for treatment of depression.  (Tr. 28.)  He was prescribed Lorazepam, which helped.  (Tr. 29.)

- He suffers from carpal tunnel syndrome in his left (non-dominant) hand.  (Tr. 28-29.)  His doctor recommended that he undergo surgery, but he declined to do so.  (Tr. 29.)  Instead he uses liniments for the pain.  *Id*.  He experiences tingling in his left hand and has problems picking things up.  (Tr. 30.)

- He cannot lift more than twenty (20) pounds due to back and neck pain.  (Tr. 30.)  Occasionally, his back gives out on him.  *Id*.  His pain is exacerbated by standing a lot.  (Tr. 30-31.)  He experiences tingling in his neck all the way down to his left hand.  (Tr. 31.)

- He frequently experiences shortness of breath from heat, extreme cold, walking, standing, and bending over.  (Tr. 32-33.)  He has prescribed inhalers.  (Tr. 33.)

- He quit smoking five to six years earlier.  (Tr. 32.)

- He can only stand for twenty (20) minutes before needing a rest.  (Tr. 34.)  He can sit for five to six hours in an eight-hour work day.  (Tr. 34-35.)

The ALJ posed the following hypothetical to the VE:

I want you to assume an individual who's age 54, has a high school education, same work experience as the claimant.  I want you to further assume this individual is able to lift and/or carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours of an eight-hour day, sit for about six hours of an eight-hour day.  Is limited to only occasional climbing, occasional stooping.  Is able to frequently handle and finger with their non-dominant upper extremity.  No limitations with respect to their dominant upper extremity. Needs to avoid work environments of extreme cold, heat and humidity.  Also needs to avoid environments with smoke, fumes, dust and gases.

(Tr. 43.)  The VE testified that such a person could not perform Richard's past work as a crane operator.  *Id*.  However, the VE opined that there were other unskilled jobs that such a person

3

could perform, such as cafeteria attendant, mail clerk, records clerk, and restaurant waiter/host. (Tr. 44-45.) The VE stated that such an individual could also perform sedentary work, but the ALJ instructed him to ignore such jobs. (Tr. 44.) The ALJ asked whether the following additional limits to the hypothetical had any impact: no climbing of ladders, ropes or scaffolds; no exposure to loud noises; and, no hazards such as dangerous machinery or heights. (Tr. 45.) The VE stated that the additional limitations would have no impact on the jobs identified. *Id*. The VE stated that his testimony was generally consistent with the Dictionary of Occupational Titles. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Richard was insured on his alleged disability onset date, March 3, 2003, and remained insured through December 31, 2008. (Tr. 11.) Therefore, in order to be entitled to POD and DIB, Richard must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV. Summary of Commissioner's Decision

The ALJ found Richard established medically determinable, severe impairments, due to chronic obstructive pulmonary disease (COPD), carpal tunnel syndrome, degenerative disc disease, and hypertension. (Tr. 11.) However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Richard was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 12.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Richard is not disabled. (Tr. 15-16.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or

supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742,

746 (6th Cir. 2006).

## VI. Analysis

*Depression and Anxiety*

Richard argues that, because the ALJ failed to find that his depression and anxiety constituted a severe impairment, this matter should be remanded for a new decision. (ECF No. 16 at 9-12.)

At Step Two of the disability analysis, the Commissioner must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). To determine if a claimant has a severe impairment, the ALJ must find that an impairment, or combination of impairments, significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) "[u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

The Sixth Circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out

totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." S.S.R. 96-3p, 1996 WL 374181 at *1. After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576-577 (6th Cir. 2009).

The ALJ found that Richard's mental impairments were non-severe, explaining as follows:

> Claimant has been prescribed medication such as Xanax (Exhibit 12F, pp. 19,46,51) and Lorazepam (Exhibit IF, pp. 6,7) by his physician. The record does not indicate referrals for counseling or the claimant ever requesting counseling. The claimant occasionally had an exacerbation of this condition due to personal stressors. He reported he was depressed in November 2003 (Exhibit 12F, p. 24). He was not sleeping and reported suicidal feelings on September 8, 2008, but he was facing two assault charges (Exhibit 12F, p. 7). He reported on January 2, 2009, that he just got out of jail and was on probation (Exhibit 12F, p. 6). The claimant's [sic] appears to have experienced some symptoms of situational depression due to circumstances of his conduct, but this does not support a finding of a severe mental impairment.

> Claimant's depression and anxiety are not severe impairments. He has exacerbations are [sic] related to personal circumstances, but these exacerbations do not last for one year or more. The claimant has the following mental limitations set forth in "Part B" of the mental listings: no restriction in activities of daily living, social functioning or concentration, persistence or pace. He has not had repeated episodes of decompensation of extended duration. The claimant's
> medically determinable mental impairment of depression/anxiety did not cause

> more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere.

(Tr. 11-12.)

Even though the ALJ found that Richard's mental impairments were not severe at Step Two, he considered them at Step Three when he discussed the B criteria. At Step Four, the ALJ found that Richard could not perform his past relevant work, rendering any discussion of his mental impairments at Step Four moot. Finally, while the ALJ did not include any vocational restrictions in the RFC to accommodate his alleged mental impairments at Step Five, Richard has not pointed to a single medical opinion of record suggesting that he had work-related limitations stemming from his depression and/or anxiety. As such, the ALJ's failure to include additional restrictions at Step Five was not unreasonable. Richard merely cites complaints made to his physicians and assumes that the fact that he was diagnosed with mental health symptoms automatically means that they must have more than a minimal effect on his work-related activities. This assumption, however, is not grounded in the record or in any law or regulation cited by Richard. While mental health impairments undoubtedly can (and often do) result in more than *de minimis* limitations, this is not *always* the case. Richard has cited no law indicating that any such presumption exists. In fact, it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

Therefore, Richard's first assignment of error is without merit.

*Credibility*

Richard argues that the ALJ's credibility determination was improper, because the ALJ

failed to provide specific reasons for his finding. (ECF No. 16 at 12-13.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"). Beyond medical evidence, there are seven factors that the ALJ should consider.[2] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

The ALJ gave Richard "the benefit of the doubt that he should avoid continued exposure to [environmental] fumes," but found that Richard was "less than credible regarding shortness of

---

[2] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F. Supp. 2d at 732.

breath when walking or standing." (Tr. 14.) He concluded that Richard's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." (Tr. 13.)

Although the ALJ's opinion could have benefitted from a more thorough analysis and exercised greater precision in explaining the reasoning behind his conclusions regarding credibility, a remand is unwarranted. The ALJ discussed a number of Richard's daily activities that could be construed as inconsistent with Richard's claimed inability to stand and/or walk for six hours of an eight-hour day due to shortness of breath. These include the fact that he lives alone, does his own cooking, laundry, and shopping, and walks the dog. (Tr. 13.) Also, despite Richard's testimony that extreme cold causes shortness of breath, the ALJ noted that Richard's symptoms were not aggravated to such an extent as to prevent Richard from engaging in outdoor activities on December 19, 2005.[3] (Tr. 14.) The ALJ also discussed the fact that although Richard claimed a disability onset date of March 3, 2003, there is no medical documentation that suggests an increase in his symptoms at that time. *Id.* Although Richard points out that he complained of shortness of breath and wheezing over a fourteen year period (ECF No. 16 at 13), the ALJ noted that Richard was able to perform his past relevant work at the light exertional level for thirty years despite the presence of those symptoms. (Tr. 14.) The ALJ also noted that Richard's claimed difficulties with dressing or tying his shoes were inconsistent with the mild pulmonary defects indicated by objective medical testing. (Tr. 13.) Furthermore, although standing and walking could certainly be limited by Richard's back problems, the ALJ noted that

---

[3] Richard's assertion that the ALJ found his testimony incredible solely on this basis – that he was outside during one day in December of 2005 – is inaccurate, as that is only one of several factors discussed in the ALJ's analysis. (Tr. 12-14.)

Richard's degenerative disc disease was described as mild or minimal after testing. (Tr. 13.) In discussing the medication prescribed, the ALJ noted that, despite the severity of the back pain alleged, Richard did not take any pain medication targeted to relieve his back pain, only his neck pain. *Id*. Finally, the ALJ implicitly noted that Richard's treatment was relatively conservative when he discussed the fact that the record did not contain a single recommendation for a surgical procedure other than for carpal tunnel syndrome. *Id*.

While the ALJ could have been more precise in tying his discussion of the evidence to his ultimate credibility conclusions, the decision was sufficiently clear to allow a reviewing court to determine the weight the ALJ gave to Richard's statements.

As such, Richard's second assignment of error is without merit.

*Medical-Vocational Rule 201.04*

In his third assignment of error, Richard argues that the evidence of record only supported an RFC for sedentary work, and, therefore, Medical Vocational Rule 201.14 compelled a finding of disabled based on his classification as an individual closely approaching advanced age. (ECF No. 16 at 14-15.)

While Richard's interpretation of Rule 201.14 is correct, it is inapplicable here because the ALJ found that Richard has an RFC for light work – not sedentary work.[4] Richard asserts that the ALJ's finding was incorrect, as the ALJ already found that Richard could not perform his past light exertional work as a crane operator. This argument is without merit. As expressly stated in the ALJ's opinion, he found that Richard could not perform the crane operator work not

---

[4] The ALJ specifically instructed the VE to avoid consideration of sedentary jobs and to discuss only light exertional jobs. (Tr. 44.)

because the exertional requirements of the job were too onerous, but rather "it [was] precluded due to environmental limits." (Tr. 15.) Specifically, the ALJ had found that Richard needed to avoid dust, fumes, gases, smoke and loud noises. (Tr. 12)

Richard also argues that "[t]he evidence proves that Plaintiff's COPD and degenerative disk disease are aggravated by substantial activity and, as a result, [he] is limited to standing and walking up to 20 minutes at a time, for a maximum of 4 hours during an 8-hour workday." (ECF No. 16 at 14.) Richard's argument amounts to nothing more than a generalized conclusion based on his own interpretation of the medical record. Except for a statement that he was diagnosed with COPD and degenerative disc disease, he does not point to any medical evidence of record to support his conclusory statement that he is so limited. *Id.* A diagnosis alone does not establish the functional limitations caused by an impairment. Moreover, even if Richard had pointed to medical evidence of record capable of supporting his assertion that he was limited to sedentary work, it would be insufficient to require a remand. Richard apparently misconstrues the substantial evidence standard, which "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545. Here, simply because Richard proffers a different interpretation of the evidence of record, the ALJ's conclusion is not thereby rendered unreasonable or untenable.

As such, Richard's final assignment of error is without merit.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by

13

substantial evidence.  Accordingly, the decision of the Commissioner is AFFIRMED and judgment is entered in favor of the defendant.

      IT IS SO ORDERED.


                                         /s/ Greg White
                                       U.S. Magistrate Judge

Date: October 4, 2011